**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**


**LINCOLN STUART TAYLOR,**

        **Petitioner,**

**v.**                                          **Civil Action No.  5:10cv49**
                                                    **(Judge Stamp)**

**DAVID R. JANES, Judge of the**
**Circuit Court of Marion County;**
**JOE E. CARPENTER, Sheriff of**
**Marion County; AND GEORGE**
**TRENT, Administrator of the**
**North Central Regional Jail;**

        **Respondents.**


**OPINION/REPORT AND RECOMMENDATION**

      The petitioner, Lincoln Stuart Taylor ("Taylor"), initiated this § 2241 habeas corpus action

through counsel on April 29, 2010.[1]  For reasons appearing to the Court, the petitioner was granted

expedited consideration of his claims.  This case is proceeding on an amended petition.[2]  On June

9, 2010, the court heard oral argument on the parties' cross motions for summary judgment.  This

case is before the undersigned for a Report and Recommendation pursuant to LR PL P 72.01.

---

      [1]The petition was originally filed pursuant to 28 U.S.C. § 2254.  (Dckt. 1).  In their response
(dckt. 12), however, the respondents argue that because the petitioner is a pre-trial detainee, proper
jurisdiction for this case lies under 28 U.S.C. § 2241.  *See* Walck v. Edmondson, 472 F.3d 1227,
1235 (10th Cir. 2007) (pretrial detainees should bring a habeas petition pursuant to the general grant
of habeas authority under § 2241).  The petitioner subsequently agreed and filed a motion to amend
his petition.  (Dckt. 15).  With the consent of the parties, that motion was granted and the petitioner
filed an amended petition to allege jurisdiction under the appropriate statute and to address the
"consequential alteration of the burden borne by the petitioner."  (Dckt. 22).

      [2]*See* n. 1, *infra*.

## I.  Factual and Procedural History

### A.  The Petitioner's State Court Proceedings

On October 2, 2007, Taylor, along with Lafayette Jenkins ("Jenkins"), Donell Lee ("Lee") and Steven Podolsky ("Podolsky"), was charged with the murder of Derrick Osborne ("Osborne"). All of those same individuals were also charged with conspiracy to commit murder.  Taylor was arrested pursuant to a criminal complaint and no bail has been granted.  He has been in continuous custody since his arrest.

Subsequent to his arrest, Taylor moved to dismiss the conspiracy charge for the failure to allege a specific overt act.  On April 14, 2008, the State dismissed the conspiracy count.  On June 6, 2008, Taylor was reindicted on that count.  The 2008 indictment again charged that Taylor, Jenkins, Lee and Podolsky acted in concert to cause the death of Osborne.  This time, the indictment also charged, as the single overt act, that Taylor shot and killed Osborne with a firearm.

Taylor's first trial began on September 15, 2008, and ended in a mistrial six days later.  His second trial commenced on November 10, 2008, and concluded on November 21, 2008 with an acquittal on the conspiracy to commit murder charge.  The jury was unable to agree on the murder count, however, and a hung jury resulted on that charge.  The petitioner's third trial on the murder charge was set to begin on Monday, August 24, 2009.

On July 14, 2009, the petitioner filed a motion *in limine* asserting that the State could not retry him on double jeopardy grounds.  Specifically, Taylor argued that because of his acquittal on the conspiracy charge, the state could not retry him on the theory that he shot and killed Osborne, or on the alternate theory that he had acted as an accessory before the fact.  In doing so, Taylor contended that his acquittal on the conspiracy charge established either that 1) there was no meeting

of the minds between Taylor and any of his named co-defendants, or 2) the overt act alleged, that Taylor shot and killed Osborne, had not occurred. Therefore, Taylor argued that he could not be guilty of murder on any theory that he acted as part of a group, thereby eliminating the argument that he had acted as an accessory before the fact. He further argued that had the overt act not been proven, then he could not have shot and killed Osborne, as that was the only overt act alleged. In light of the alibi evidence presented at trial, Taylor suggested that it was more likely than not that the not guilty verdict was premised on him not committing the alleged overt act.

In response, the prosecution seemingly agreed with Taylor's conclusion that the not guilty verdict on the conspiracy charge could mean only two things, that the jury found no meeting of the minds, or that Taylor did not shoot and kill Osborne. Nonetheless, the State challenged the motion *in limine* arguing that an apparent inconsistency between a jury's verdict of acquittal on some counts, and its failure to return a verdict on other counts, does not affect the acquittal's preclusive force under the Double Jeopardy Clause. Moreover, the State argued that the court could not look behind the jury's verdict to determine whether, by acquitting Taylor of conspiracy, the jury concluded either that Taylor was not the shooter or that he was not a party to an agreement to shoot Osborne.

After briefing on the issue, the Circuit Court denied the petitioner relief in a written opinion. Specifically, the Circuit Court found:

> In West Virginia, conspiracy to commit murder (of which Mr. Taylor was acquitted) is not a predicate to the offense of murder in the first degree (the offense on which the jury hung in Mr. Taylor's November 2008 trial). One could, of course, be convicted of murder in the first degree without first committing the offense of conspiracy to commit murder.
> As recalled in its Yeager opinion, in Ashe v. Swenson, 397 U.S. 436 (1970), the Supreme Court explained that "when an issue of ultimate fact has once been determined by a valid and final judgment" of acquittal, it "cannot again be litigated" in a second trial for a separate offence. *Id.* at 443. Consequently, the Ashe opinion requires that courts "examine the record of

a prior proceeding, taking into account the pleadings, evidence, charge, and
other relevant matter, and conclude whether a rational jury could have
grounded its verdict upon an issue other than that which the defendant seeks
to foreclose from consideration." And, as Yeager now requires, "to identify
what a jury necessarily determined at trial, courts should scrutinize a jury's
decisions, not its failures to decide." Accordingly, the Yeager court
concluded that "if the possession of insider information was a critical issue
of ultimate fact in all of the charges against [Yeager], a jury verdict that
necessarily decided that issue in his favor protects him from prosecution for
any charge for which that is an essential element."

      This Court acknowledges that Mr. Taylor's acquittal of conspiracy
leads to issue preclusion as a component of double jeopardy. However, as
Mr. Taylor concedes, "issue preclusion need not inevitably lead to a complete
bar to prosecution on any theory."

      Upon its thorough review of the record in this case, this Court is
unable to determine which issue was necessarily decided in Mr. Taylor's
favor by the jury in it verdict of acquittal of the conspiracy charge against him
and, accordingly, which issue should be precluded in Mr. Taylor's impending
trial as a component of double jeopardy.

Pet. Ex. K at 4-5.

Thereafter, Taylor sought relief in the West Virginia Supreme Court of Appeals ("WVSCA")
by way of a Petition for Writ of Prohibition. The state objected and the WVSCA agreed to hear
argument. Oral argument was held on March 10, 2010. The WVSCA denied petitioner relief on
April 5, 2010 by written opinion. After a review of both Supreme Court and West Virginia law on
the issues of double jeopardy and issue preclusion, the WVSCA found in pertinent part:

      Accordingly, we hold that where a jury has acquitted a defendant on
one or more charges, but deadlocked on other charges, resulting in a mistrial
on the deadlocked charges, a court must, upon motion, determine whether
collateral estoppel bars the State from reprosecuting the defendant on the
deadlocked charges.

      In determining whether collateral estoppel bars retrial of a defendant
following a trial where a jury acquitted the defendant on one or more charges,
but deadlocked on other charges, a court must examine the record of the prior
proceeding, taking into account the pleadings, evidence, jury charge, and all
other relevant matter, and conclude whether a rational jury could have
grounded its verdict of acquittal upon an issue other than the issue which the
defendant seeks to bar from reprosecution.

4

*****

[W]e initially note that judgment of acquittal on the conspiracy count against Mr. Taylor was a "general verdict." The verdict form signed by the jury did not delineate or specify which element[s] the jury concluded that the State had failed to prove. The jury did not decide any special interrogatories that may have revealed the basis of their decision to acquit Mr. Taylor. Absent this clear statement from the jury, we must instead look to the record to determine whether a jury could rationally have grounded its verdict upon an issue other than that which the defendant seeks to preclude.

In reviewing the record, we find the trial court's charge to the jury – as to what the jury must find to convict Mr. Taylor of conspiracy to commit first degree murder – to be dispositive of Mr. Taylor's collateral estoppel claim . . .

Reviewing the trial court's charge to the jury on the conspiracy count, it is clear that several critical issues of ultimate fact were required to be found by the jury before it could convict Mr. Taylor of conspiracy to commit first degree murder. These ultimate issues are that Mr. Taylor: (1) intentionally entered into an agreement; (2) conspired with all of the named co-conspirators for the purpose of killing Derrick Osborne; (3) committed the overt act of murdering the decedent in furtherance of the conspiracy, and (4) that the conspiracy had not been abandoned when the murder occurred.

The sole overt act alleged in the conspiracy indictment was that Mr. Taylor shot and killed the decedent. This alleged fact is also a critical issue of ultimate fact in the murder indictment. However, it cannot be rationally concluded from the record that the jury *necessarily* decided, in acquitting Mr. Taylor of the conspiracy charge, that Mr. Taylor did not shoot and kill the decedent.

Instead, the jury could have found that the conspiracy alleged in the indictment did not occur or had been abandoned before the murder occurred. It could also be that the jury did not believe Mr. Taylor shot and killed Derrick Osborne, as alleged. It is also a rational conclusion that members of the jury were split in their decision as to which of the *specific* elements they believed the State had failed to prove, but rather were only unanimous in their judgment that the State had failed to prove all of the elements, all the ultimate issues of fact, necessary to prove a conspiracy to commit first degree murder.

None of these factual scenarios were *necessarily* decided – to the rational exclusion of all others – by the jury in its decision to acquit Mr. Taylor. The trial court's charge to the jury was clear: "[i]f the jury and each member of the jury has a reasonable doubt of the truth of the charge *as to any one or more of these elements* of conspiracy to commit murder, you shall find the defendant not guilty." (Emphasis added).

*****

5

Based upon our review of the entire record, we conclude that double jeopardy does not bar Mr. Taylor's retrial for first degree murder and that the State is not barred from presenting evidence supporting its theory of the case, including that Mr. Taylor interacted with others in carrying out the alleged murder and that Mr. Taylor was the shooter.

Pet. Ex. P at 15-22.

In light of the WVSCA's denial of his writ of prohibition, Taylor filed this federal habeas action seeking relief against reprosecution by the State.

## II.    Contentions of the Parties

### A.    The Petitioner's Amended Federal Habeas Petition

In the amended petition, Taylor asserts that in Gilliam v. Foster, 75 F.3d 881 (4th Cir. 1996), the Fourth Circuit held that a district court could hear and determine, on the merits, a federal habeas corpus petition alleging a double jeopardy violation by a person in the status of a pre-trial detainee. Amended Petition at 4.  As grounds for his petition, Taylor asks this Court to "vindicate his constitutional rights protected under the Double Jeopardy Clause of the United States Constitution." *Id.* at 7.  He further asks the Court to grant his petition for habeas corpus relief and prohibit "his murder trial from proceeding on both the theory that [he] was the shooter and/or was an accessory before the fact to a murder committed by another."  *Id.*

In support of his request, Taylor asserts that the State court failed to properly analyze his claim under the prevailing Supreme Court precedent.  *Id.* at 5.  Specifically, Taylor asserts that a verdict of acquittal is entitled to collateral estoppel effect, even when accompanied by a hung jury on a related count.  *Id.* (citing Yeager v. United States, ___ U.S. ___, 129 S.Ct. 2360 (2009)).  He further asserts that collateral estoppel is a component of the Double Jeopardy Clause, *id.* (citing Ashe v. Swenson, 397 U.S. 436, 442-445 (1970)), and that a collateral estoppel analysis must be

performed from a practical perspective, giving effect to the particular circumstances of the case. *Id.* (citing <u>Sealfon v. United States</u>, 332 U.S. 575 (1948)). Taylor asserts that because the trial judge and the WVSCA failed to properly analyze what facts were determined by the earlier verdict, as they were required to do under the aforementioned Supreme Court caselaw, he was deprived of an appropriate review of his claims in state court. *Id.*

He also asserts that under 28 U.S.C. § 2241, this court is not required to give substantial deference to the decision of the State court. *Id.* at 6. Instead, Taylor contends that he merely has to show that the decision of the State court is inconsistent with double jeopardy protections. *Id.*

### B. The Respondents' Response

On June 7, 2010, the respondents filed an Answer to the Petition and Motion for Summary Judgment. *See* Dckts. 12-14. In their Answer, the respondents generally deny that any violation of the petitioner's rights has occurred. Resp't Answer (dckt. 12) at 1.

In their motion for summary judgment, the respondents assert that they are entitled to judgment as a matter of law and allege the following:

(1) the Court should abstain from ruling on the merits of this case in accordance with <u>Younger v. Harris</u>, 401 U.S. 37 (1971);

(2) the petitioner has failed to state a claim upon which relief can be granted; and

(3) the petitioner has failed to demonstrate that he is entitled to relief on his claims.

Resp't Motion (dckt. 13) at 1.

In support of their abstention argument, the respondents assert that under <u>Gilliam</u>, the Fourth Circuit found that where an "alleged double jeopardy violation is far from clear, immediate, or irreparable, the important <u>Younger</u> policy of allowing the State to pursue its prosecution free from

federal court intervention outweighs [the petitioner's] interest in having the double jeopardy issue resolved in a federal forum."  Resp't Memorandum (dckt. 14) at 6-7 (quoting Nivens v. Gilchrist, 444 F.3d 237, 244 (4th Cir. 2006)).  Because Gilliam's mistrial was the sort that prevented a retrial, the respondents argue that he was entitled to pretrial relief because he could not be tried again.  *Id.* at 6.

In this case, on the other hand, the respondents assert that the petitioner does not seek to bar his retrial, but rather, seeks only an injunction which requires the State not to present certain theories of the case upon retrial.  *Id.* at 2, 6 -7.  Therefore, the respondents assert that the petitioner is not invoking the rule against being twice put to trial for the same offense and cannot show irreparable harm.  *Id.* at 6.  Without a showing that he will be burdened by being put to trial twice, the respondents assert that the petitioner's invocation of the Double Jeopardy Clause does not override the Younger abstention doctrine.  *Id.* at 7.

Next, the respondents argue that the petitioner has either failed to state a claim for which relief may be granted, or failed to demonstrate that he is entitled to relief on his claims.  The respondents further assert that neither the Double Jeopardy Clause, nor the principle of collateral estoppel, bar a retrial or preclude any single fact-issue from being retried.  *Id.*  at 8.  In support of this argument, the respondents, citing Yeager, assert that a "general verdict" is only preclusive of those issues that were "necessarily decided" against the State.  *Id.* at 8.  To determine whether an issue is precluded at a later trial, courts "should examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."  *Id.*  at 8-9 (quoting Yeager at 2367).  Moreover, the respondents argue that the

deadlocked charge, in this case, the murder charge, is considered a non-event for collateral estoppel purposes and should not be considered in that analysis. *Id.* at 9 (citing <u>Yeager</u>).

Next, the respondents argue that in considering the petitioner's Writ of Prohibition, the WVSCA quoted and applied the appropriate Supreme Court caselaw on double jeopardy and collateral estoppel – notably, <u>Ashe</u> and <u>Yeager</u> – to the circumstances of the petitioner's case. *Id.* at 9. The WVSCA found that the State was not barred by double jeopardy from trying him for first degree murder, despite his acquittal for conspiracy. *Id.* The respondents note that in doing so, the WVSCA found that the jury could have found that (1) the conspiracy alleged in the indictment did not occur; (2) the conspiracy was abandoned before the murder occurred; (3) Taylor did not shoot and kill Osborne; or (4) the jury split in their decision as to which specific elements were not proved, but were unanimous in their judgment that the State failed to prove all of the elements. *Id.* at 10 (citing <u>State *ex. rel.* Taylor v. Janes</u>, 2010 WL 1408249 (April 5, 2010)). Similarly, the respondents assert that, the circuit court, in its order denying the petitioner's motion *in limine*, held that it could not determine which issues were decided against the state based on the conspiracy acquittal. *Id.*

The respondents note that the charge in the indictment read as follows:

> The Grand Jurors of the State of West Virginia . . . charge that LINCOLN STUART TAYLOR and DONELL LEE, . . . committed the offense of CONSPIRACY TO COMMIT MURDER, by unlawfully and feloniously conspiring with another person to commit any offense against the State and any one or more of the subjects does any act to effect the object of the conspiracy, to wit: Lincoln Stuart Taylor, Donell Lee, Stephen Podolosky, and Lafayette Jenkins did conspire to commit the offense of First Degree Murder . . . and Lincoln Stuart Taylor subsequently did murder Derick (sic) Osborne by shooting him with a firearm and causing his death . . .

*Id.* 12. The respondents then assert that in examining the elements of the conspiracy count with respect to the charge in the indictment, one could conclude that a rational jury could have acquitted

the petitioner of conspiracy to commit murder yet reach no decision with respect to the petitioner's guilty or innocence on the murder charge.  *Id.*  The respondents cite to the Eighth Circuit case of United States v. Howe, 590 F3d 552 (8th Cir. 2009), which after applying Yeager, found that double jeopardy and collateral estoppel did not prohibit the State of Arkansas from retrying a defendant for kidnapping and conspiracy to commit kidnapping where the jury failed to reach a verdict on the same and at the same time, acquitted the defendant of felony murder and using or carrying a firearm in furtherance of a crime of violence.  *Id.*  The Howe Court held:

> [A] rational jury could have acquitted Howe of felony murder under the following rationale.  First, the jury could have found that Gaither [the victim] did not die as a consequence of the *kidnapping*, but rather as a consequence of the *robbery.*  Second, the jury then could have determined that Howe did not knowingly and willfully participate in the *robbery.*  As such, the jury may have acquitted on felony murder without ever passing judgment on whether Howe did or did not participate in the kidnapping.  The jury's acquittal on felony murder, therefore, does not stop the government from pursuing the Howe II kidnapping count.

*Id.* at 13 (quoting Howe at 557-58).  The respondents argue that the Howe opinion was based on the charge to the jury in the original trial – the same analysis used by the WVSCA in denying the petitioner's writ of prohibition.  *Id.*

Finally, the respondents assert that the petitioner's reliance on the Zirk v. Muntzing case is misplaced.  *See State ex. rel.* Zirk v. Muntzing, 146 W.Va. 878 (1961).  Specifically, the respondents assert that although the WVSCA in Zirk held that a defendant could not be tried for murder where he had previously been acquitted for conspiracy, Zirk is distinguishable from the instant case.  *Id.* 14.  The respondents argue that in Zirk, the indictment for conspiracy was very specific and contained all of the elements of the subsequent murder charge.  *Id.*  Therefore, by being found guilty of the conspiracy, Zirk was also found guilty of the murder charge and his retrial on the murder

charge was barred from further prosecution. *Id.* The respondents assert that in this case, the conspiracy count did not contain all the same essential elements as the murder case and is distinguishable. *Id.* at 14-15.

### C. The Petitioner's Motion for Summary Judgment

In his motion for summary judgment, the petitioner asserts that the State of West Virginia wants to retry him for murder using the same evidence that led a jury to acquit him of conspiracy to commit murder. Petitioner's Memorandum (dckt. 18) at 1. The petitioner asserts that the State argues that the prior verdict of acquittal did not resolve any factual issue in his favor and therefore the principles of double jeopardy and collateral estoppel do not apply in this case. *Id.*

In support of his motion, the petitioner asserts that the prosecution bears the burden of establishing the elements of an offense. *Id.* at 3. These elements are a series of facts that define the criminal behavior. *Id.* Each element must be proven for there to be a conviction. *Id.* Thus, an acquittal logically means that the State failed to prove at least one element of the offense. *Id.* Moreover, the petitioner further notes that criminal trials do not usually involve a dispute as to every element. *Id.* There are usually only one or two key issues in dispute. *Id.* To claim collateral estoppel, the petitioner argues, he only has to show that some key issue was resolved in his favor. *Id.* at 4.

As to abstention, the petitioner asserts that although the respondents concede that double jeopardy issues are often exempt from the limitations of <u>Younger</u>, they would limit it to cases in which the petitioner seeks complete relief, such as dismissal of the charges or release from jail. *Id.* at 5. In essence, the petitioner argues that he is not required to show that his trial must go away, as the respondents suggest, but only that a subsequent proceeding would result in the loss of the prior

verdict in his favor. *Id.* at 6. Thus, the petitioner asserts that the Court should not abstain from reviewing his claims. *Id.*

As to the merits of his claims, the petitioner asserts that given the facts of the case, there were only two key acts in dispute with the conspiracy charge. *Id.* at 7. The first was whether an agreement existed between Taylor and his alleged co-conspirators to kill Derrick Osborne. *Id.* The second was whether an overt act occurred in furtherance of the conspiracy. *Id.* The only overt act alleged in the indictment was that Taylor shot and killed Osborne. *Id.*

The petitioner argues that if the jury determined that the State had failed to prove the overt act, he clearly cannot be retried on the murder charge as no issue would be more crucial to the murder charge than that. *Id.* at 7-8. Because the State obtained an instruction on Taylor being an accessory before the fact, however, the murder charge would not be precluded in its entirety because Taylor need not have shot Osborne in order to be found guilty as an accessory before the fact. *Id.* at 8.

On the other hand, if the jury found that Taylor had not agreed to commit murder, evidence of his participation in the conspiracy to commit the murder of Derrick Osborne would not be permitted. *Id.* For example, Taylor argues that the State would be precluded from presenting evidence that he was hired as a hit man, as you cannot be hired as a hit man unless you have agreed to participate in a crime. *Id.* Thus, the State would be limited to presenting evidence that Taylor acted alone, without being able to offer his motive for having done so. *Id.*

The petitioner next asserts that the WVSCA "unnecessarily adopted a view of the jury instructions to suggest that Judge Janes misinstructed the jury on the charge of conspiracy. It has further refused to accept its obligation under the Constitution to only construe the jury verdict in a

rational way." *Id.* at 9. In support of these claims, the petitioner notes that the WVSCA has previously interpreted a conspiracy as an agreement between two or more people to commit an offense against the State and that some member of the agreement committed an overt act to further the object of the agreement. *Id.* (quoting State v. Less, 170 W.Va. 259, 264-65, 294 S.E.2d 62, 67 (1981)). Thus, the petitioner argues that there was no proper reason for the WVSCA to suggest that the jury instructions at trial required the jury to find that Taylor conspired with all of the named co-defendants. *Id.* at 10. And further, the petitioner argues that "rationalizing a jury verdict on a 'mistake' by the jury violates the obligation established in Ashe . . . " because "collateral estoppel depends on evaluating what a 'rational jury' concluded." *Id.* at 11.

The petitioner also takes issue with the WVSCA's determination that his acquittal was the result of a divided jury. *Id.* at 12. The petitioner notes that the WVSCA, and the respondents, assert that some members of the jury could have found that no agreement existed, while others determined that Taylor was not the shooter, ultimately resulting in an acquittal. *Id.* The petitioner argues, however, that such a conclusion cuts against the well-founded principle that a jury speaks through its verdict in a single voice. *Id.* Moreover, he recognizes that "[d]etermining what a verdict means in hindsight can be difficult, but the duty of the Court is to . . . determine the collateral estoppel effect of the verdict." *Id.* (citing Emich Motors Corp., v. General Motors Corp., 340 U.S. 558 (1951)).

Turning specifically to the respondents' arguments, the petitioner argues that he never has contested that Mr. Osborne is dead, that he was shot and killed by someone or that Podolsky, Jenkins and Lee had a part in that death. *Id.* at 13. Thus, the petitioner argues that it is not realistic to assume that his acquittal was based on any reason other than those he has suggested. *Id.* In

conclusion, the petitioner asserts that the double jeopardy clause precludes the State from attempting to prove that he both shot and killed Derrick Osborne and that he did so as a part of a group. *Id.*

### III.   Standard of Review

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. *Id.* This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. *Id.* at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact

14

to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV.    Analysis

### A.    Abstention and Comity

In Younger v. Harris, *supra*, the Supreme Court held that federal courts should not interfere with state criminal proceedings except in very narrow and extraordinary circumstances. The Court specifically stated that the most fundamental tenets of equity jurisprudence prescribe that a court "of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Younger at 43-44. Moreover, "concerns of comity and federalism justify additional caution when a federal court is petitioned to intervene in a pending state criminal action." Gilliam v. Foster, 75 F.3d at 903 (citing Kugler v. Helfant, 421 U.S. 117, 123 (1975)). Therefore, a federal court may only intervene in pending state criminal proceedings by way of declaratory or injunctive relief, or where "there has been a showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." Younger at 54.

Pertinent to this case, where the state criminal proceedings have not been undertaken in bad faith or for the purpose of harassment,[3] a federal court may only intervene in those proceedings when extraordinary circumstances exist which show irreparable injury will occur if the proceedings are allowed to continue. *Id.* at 53. "[B]ecause the Double Jeopardy Clause of the Fifth Amendment protects against being twice put to trial for the same offense, a portion of the constitutional protection it affords would be irreparably lost if Petitioners were forced to endure the second trial before

---

[3]At oral argument, the parties agreed that there were no provable allegations of bad faith or harassment.

seeking to vindicate their constitutional rights at the federal level.  Thus, the irreparable deprivation

of this Fifth Amendment Double Jeopardy right is an extraordinary circumstance warranting federal

court equitable intervention in Petitioners' state criminal proceedings."  <u>Gilliam</u> at 905 (internal

citations and quotations omitted).  Consequently, "[e]quitable federal court interference with ongoing

state criminal proceedings should be undertaken in only the most limited, narrow, and circumscribed

situations.  However, when the record demonstrates that a second state criminal trial will constitute

a violation of the defendant's double jeopardy rights, federal court intervention is appropriate."  *Id.*

     <u>Gilliam</u> appears to create a broad general rule that a colorable double jeopardy allegation

precludes <u>Younger</u> abstention.  Notwithstanding the appearance of such a broad holding, the Fourth

Circuit later limited <u>Gilliam</u> by finding that "a party must show a 'substantial likelihood of an

irreparable double jeopardy violation' in order to avoid <u>Younger</u> abstention."  <u>Nivens v. Gilchrist</u>,

444 F.3d at 242.

     In their motion, the respondents argue that this Court should abstain from interfering with

the petitioner's pending criminal proceedings in State court, the purpose of which is to retry the

petitioner on the first degree murder charge that the previous jury could not unanimously decide.

The respondents properly recognize that "the cost, anxiety, and inconvenience of having to defend

against a single criminal prosecution" does not by itself constitute irreparable harm.  <u>Younger</u>, 401

U.S. at 46.  Therefore, the respondents contend that, because the petitioner seeks to limit the

evidence presented at retrial, rather than bar that proceeding altogether, he cannot show that the

subsequent trial will cause him irreparable harm.  Thus, the respondents argue that the double

jeopardy exclusion to <u>Younger</u> is inapplicable in these circumstances.

     The respondents fail to consider, however, that a defendant may also be irreparably harmed

by having to retry issues of ultimate fact that have already been determined by a previous final judgment.  In other words, the protections of the Double Jeopardy Clause are not limited only to the preclusion of a subsequent trial.  The Double Jeopardy Clause also protects against being tried again on issues previously determined by the trier of fact.  Consequently, irreparable harm may be shown when a defendant is acquitted of a charge and the State then attempts to retry him on other charges using facts already settled at the previous trial.  Succinctly put, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. at 443.

In this case, the petitioner argues that the Double Jeopardy Clause prevents the State from relitigating those issues of ultimate fact that the jury necessarily determined when it rendered its judgment of acquittal on the conspiracy charge.  In essence, he argues that irreparable harm would occur by allowing the State to retry him without limitation.  The Court agrees.

Ashe makes clear that the double jeopardy clause precludes the relitigation of those ultimate facts which have already been decided.  Here, the petitioner would lose one of the valuable rights protected by the Double Jeopardy Clause were the Court to permit the State to retry him on such issues.  Where "a portion of the constitutional protection [that the Double Jeopardy Clause] affords would be irreparably lost" such harm is an "extraordinary circumstance warranting federal court equitable intervention in [a petitioner's] state criminal proceedings." Gilliam, 75 F.3d at 904. Insomuch as abstention is discretionary,[4] this Court finds that given the circumstances of this particular case, the double jeopardy injury alleged by the petitioner is irreparable.  Moreover, even

_____

[4]A court of equity "*should not* act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Younger, 401 U.S. at 43-44.

if the required analysis leads the Court to what may appear to be the same or similar result reached by the State courts, the Court cannot abrogate its duty under the double jeopardy clause to conduct the analysis. Accordingly, the petitioner has established unusual circumstances warranting equitable intervention in his pending state criminal proceedings, and thus he has shown an exception to Younger abstention. *Id.*

## B. Merits of Petitioners' Double Jeopardy Claim

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Stated otherwise, the Double Jeopardy Clause "bars a second prosecution for the same offense after acquittal or after conviction." United States v. Yearwood, 518 F.3d 220, 227 (4th Cir. 2008). It also contains a collateral estoppel component which bars "relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses." United States v. Ruhbayan, 325 F.3d 197, 201 (4th Cir. 2003).

Relevant to collateral estoppel, once an issue of ultimate fact has been decided, that same issue is precluded from a subsequent trial. Ashe v. Swenson, 397 U.S. at 443. In order "[t]o decipher what a jury has necessarily decided, . . . courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" Yeager v. United States 129 S.Ct. at 2367 (quoting Ashe at 444). In other words, the burden is on the defendant "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." Dowling v. United States, 493 U.S. 342, 350 (1990).

18

The Supreme Court has decided also that "apparent inconsistency between a jury's verdict of acquittal on some counts and its failure to return a verdict on other counts [does not affect] the preclusive force of the acquittals under the Double Jeopardy Clause of the Fifth Amendment." Yeager 129 S.Ct. at 2362-2363. In so finding, the Supreme Court reasoned that "[b]ecause a jury speaks only through its verdict, its failure to reach a verdict cannot-by negative implication-yield a piece of information that helps put together the trial puzzle." *Id.* at 2367. Accordingly, hung counts are "not a relevant part of the record of the prior proceeding." *Id.* (internal quotations omitted). To ascribe meaning to a hung count, the Court held, "would presume an ability to identify which factor was at play in the jury room. But that is not reasoned analysis; it is guesswork." *Id.* at 2368.

In this case, the petitioner was charged with conspiracy to commit murder as well as the substantive offense of first degree murder. He was acquitted on the conspiracy charge, and due to a hung jury, a mistrial was declared on the murder charge. It is apparent from the pleadings and arguments that the respondents seek to retry the conspiracy charge during retrial of the mistried count. When such a situation occurs, the court "must first determine whether the two offenses at issue . . . the substantive offense of [first degree murder] and conspiracy to commit that offense-are the 'same offense' such that retrial on the [murder] count [is] barred by the Double Jeopardy Clause." Yearwood, 518 F.3d at 227.

"The Supreme Court has long held that two offenses are the 'same' for Double Jeopardy purposes if they cannot survive the 'same-elements' test. The 'same-elements' test asks whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.* (internal citations and quotations omitted). Moreover, it is a well-established rule that "a substantive crime and a

conspiracy to commit that crime are not the 'same offence' for double jeopardy purposes," even if the conspiracy and the substantive crime are based on the same conduct. <u>United States v. Felix</u>, 503 U.S. 378, 389-90 (1992); *see also* <u>Sealfon v. United States</u>, *supra*. "Indeed, conspiracy is a distinct offense from the completed object of the conspiracy. This is because the agreement to do the act is distinct from the act itself." <u>Yearwood</u>, 518 F.3d at 227 (internal citations and quotations omitted).

Here, as in <u>Yearwood</u>, the petitioner has been charged with conspiracy to commit a substantive crime as well as the substantive crime itself. According to the jury instructions given at Taylor's trial, in West Virginia, conspiracy to commit murder is a four-element crime, requiring an (1) agreement with another person or persons for the (2) purpose of committing the offense of murder in the first degree and (3) one member of the conspiracy, subsequent to the agreement, committed an overt act to effect the object of the conspiracy, (4) which conspiracy had not terminated. Pet. Ex. M (Trial Transcripts) at 1671; *see also* W. Va. Code § 61-10-31. The jury was also instructed that first degree murder, under West Virginia law is defined as the (1) willful, deliberate, premeditated, intentional and malicious (2) killing of another person. Pet. Ex. M at 1666; *see also* W. Va. Code § 61-2-1.

Clearly in this case, the murder charge and the conspiracy charge each "contain an element not contained in the other" and are therefore not the same offense. <u>Yearwood</u>, 518 F.3d at 227. Thus, the petitioner's retrial for murder does not violate the same elements test of the Double Jeopardy Clause. Having decided that the petitioner's retrial for murder is not violative of the same elements test of the Double Jeopardy Clause, we now turn to the matter of issue preclusion.

In order to show that an issue is precluded from retrial, a defendant is required to demonstrate

that such issue of ultimate fact was necessarily decided in his favor at the previous trial. <u>Ashe</u>, 397 U.S. at 443. Where a previous judgment is based upon a general verdict, the court first has to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 444. This must be done "in a practical frame and viewed with an eye to all the circumstances of the proceedings." <u>Sealfon v. United States</u>, 332 U.S. at 579.

In denying the petitioner's Writ of Prohibition, the WVSCA noted that the judgment of acquittal on the conspiracy count against the petitioner was a general verdict.[5] Pet Ex. P at 19. The jury was charged as follows:

> Before the defendant can be convicted of conspiracy to commit murder, the State of West Virginia must overcome the presumption that the defendant, Lincoln Taylor, is innocent and prove to the satisfaction of the jury, beyond a reasonable doubt, that: the defendant, Lincoln Taylor; in Marion County, West Virginia; on, about or before the 28th day of May, 2007; intentionally entered an agreement and conspired with other persons, to-wit: Lafayette Jenkins, Steven Podolsky, and Donell Lee; for the purpose of killing Derrick Osborne; and that Lincoln Taylor, Lafayette Jenkins, Steven Podolsky, and/or Donell Lee, conspirators; subsequent to the agreement; committed an overt act in furtherance of the conspiracy, which conspiracy had not terminated.
>
> If after impartially considering, weighing and comparing all the evidence, both that of the state and that of the defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of conspiracy to commit murder, you may find Lincoln Taylor guilty as charged in the indictment in case number 08-F-77. If the jury and each member of the jury has a

---

[5]The Court noted that the verdict form stated "signed by the jury did not delineate or specify which element[s] the jury concluded that the State had failed to prove" nor did the jury "decide any special interrogatories that may have revealed the basis of their decision to acquit Mr. Taylor." Pet. Ex. P at 19.

reasonable doubt of the truth of the charge as to any one or more of these
elements of conspiracy to commit murder, you shall find the defendant
not guilty.

Pet. Ex. M at 1672-73. Pursuant to this charge, the WVSCA found that the ultimate issues

for the jury to decide were that the petitioner: "(1) intentionally entered into an agreement; (2)

conspired with all of the named co-conspirators for the purpose of killing Derrick Osburne (sic); (3)

committed the overt act of murdering the decedent in furtherance of the conspiracy; and (4) that the

conspiracy had not been abandoned."[6] Pet. Ex. P at 20.

To determine whether an issue should be precluded in the Fourth Circuit, a court "must

decide (1) whether the issue in question is identical to the previous issue, (2) whether it was actually

determined in the prior adjudication, (3) whether it was necessarily decided in that proceeding, (4)

whether the resulting judgment settling the issue was final and valid, and (5) whether the parties had

a full and fair opportunity to litigate the issue in the prior proceeding.  In order for the determination

of an issue to be given preclusive effect, it must have been necessary to a judgment."  United States

v. Fiel, 35 F.3d 997, 1006 (4th Cir. 1994) (citing United States v. Nash, 447 F.2d 1382 (4th Cir.

1971)).

Here, the petitioner contends that the jury's verdict of acquittal on the conspiracy charge can

mean one of only two things;[7] he did not enter into an agreement with the alleged co-conspirators

_____

[6]This Court defers to the State's interpretation of its own laws.  Estelle v. McGuire, 502 U.S.
62, 67-68 (1991) (it is not the province of a federal habeas court to "reexamine state-court
determinations on state-law questions").

[7]The WVSCA noted a third possibility, that the jury may have been split as to the elements,
which the State presents in its motion for summary judgment.  Resp't Memorandum at 11.  At oral
argument, counsel for the petitioner argued that the court should not consider this possibility because
it assumes that the jury's decision was irrational.  Although the Court understands how the WVSCA
came to this conclusion, it declines to consider that additional possibility as it does not change the

or he did not shoot and kill Derrick Osborne. If the petitioner's argument holds, then he cannot show that a rational jury grounded its verdict on one issue over the other as there are "a number of possible explanations for the jury's acquittal verdict" on the conspiracy charge. <u>Dowling v. United States</u>, 493 U.S. at 352. Furthermore this case involves a general verdict,[8] and because the court may not inquire into the jury's thought process or guess what it was thinking, based on record, the court cannot determine which key issues were decided in the petitioner's favor. <u>Yearwood</u>, 518 F.3d at 229 (citing <u>Schiro v. Farley,</u> 510 U.S. 222, 232 (1994)). Such a paradox is fatal under the <u>Fiel</u> test.

A thorough reading of the petitioner's trial transcripts shows that there was little physical or forensic evidence presented to the jury. Instead, the case was based largely on an abundance of testimonial evidence. As a result, the credibility of the witnesses was crucial to the jury's determination of the verdict. In addition, the crime of conspiracy to commit murder contains multiple elements. However, only two of those elements were actually at issue in the trial – agreement and overt act.[9] For the Court to determine which facts the jury "necessarily decided" in acquitting Taylor of the conspiracy charge, it would need to venture into the minds of the jurors to

Court's final determination.

[8]"A general verdict of acquittal merely indicates that the government has failed to convince the jury, beyond a reasonable doubt, of at least one essential element of the substantive offense; it does not 'necessarily determine' any facts at issue [in the previous trial]." <u>United States v. Brackett</u>, 113 F.3d 1396, 1400 (5th Cir. 1997).

[9]There is no dispute that the purpose of the alleged conspiracy was to commit murder, which is clearly an illegal act. Moreover, from this Court's review of the entire record in this case, there was no testimony to suggest that Taylor participated in the conspiracy but withdrew prior to the overt act being committed. The testimony of the State's witnesses was that Taylor not only helped plan Osborne's murder, but in fact, completed the alleged overt act. By comparison, the testimony from the defense's witnesses was that Taylor was never involved in any agreement to commit murder, nor was he there at the time the murder took place. Therefore, the only elements of conspiracy actually in dispute at Taylor's trial were agreement and overt act.

ascertain what credibility determinations were made and how they related to the various elements of the crime. This the Court cannot do.

On the one hand, Podolsky and Jenkins – two of the petitioner's alleged co-conspirators – testified that Taylor was involved in the shooting of Derrick Osborne. Pet. Ex. M at 370-481, 840-885. Jenkins testified that another of the petitioner's alleged co-conspirators – Donell Lee – had a failing out with Osborne. *Id.* at 853-56, 888-89. Jenkins also testified that Osborne, a gang member, threatened him and Lee with a gun. *Id.* at 857-58. Jenkins further testified that he and Lee feared that Osborne would harm them. *Id.* at 858-59. He then testified that he told Lee to "handle the problem." *Id.* Podolsky testified that Taylor agreed to be a "hit man" for Jenkins and Lee in order to absolve a drug debt. *Id.* at 407-412. Jenkins, however, testified that Taylor was not in debt to him. *Id.* at 886. Lee did not testify at Taylor's trial.[10]

Significantly, Podolsky was the only witness to name Taylor as the shooter. *Id.* at 427-434. In fact, Jenkins testified that he had always believed Lee was the actual shooter. *Id.* at 886. Taylor presented testimony that he was not present at the time/place of the shooting and presented an alibi witness to corroborate this assertion. *Id.* at 1558, 1516-17. Moreover, the defense presented testimony from two eyewitnesses placing Podolsky and Lee, but not Taylor, at the scene of the murder. *Id.* at 1375-78, 1476-78. Taylor also testified that although he had bought drugs from Jenkins, he had not helped plan the murder of Derrick Osborne, did not shoot Osborne and had

---

[10]At the time of Taylor's trial, Lee had already been convicted in this case and his case was on appeal. [Pet. Ex. M at 1012]. He therefore could not be compelled to testify against Taylor because of his right against self-incrimination. *Id.* The State, however, presented taped conversations between Lee and the police, over Taylor's objection. Those taped conversations were not transcribed and the Court is without the opportunity to review Lee's statements.

absolutely no part in Osborne's murder. *Id.* at 1600, 1639.

The State also offered testimony by others who had been incarcerated with Taylor and who claimed that Taylor confessed or implicated himself to them in the murder of Derrick Osborne. *Id.* at 823, 963-70. Taylor, of course, denied that any such conversations occurred and the defense otherwise tried to discredit that testimony. *Id.* at 1629-31. The State also attempted to show that various pieces of physical evidence linked Taylor to the conspiracy and the murder. That evidence, however, was largely linked to Taylor through testimony given by Podolsky. *Id.* at 424-25, 427, 433-34, 442. Additionally, Taylor presented expert testimony contradicting at least one aspect of the physical evidence that the State attempted to link to him. *Id.* at 1359-64.

Clearly, this small sampling of the testimony presented at Taylor's trial shows that the jury's decision could have been based on any number of considerations. For that reason, this case is distinguishable from cases like Ashe, which involved a trial with only a single offense and/or a trial in which only a single issue was contested. In Ashe, six poker players were robbed by a group of masked men. Ashe v. Swenson, 397 U.S. at 437. Ashe was tried and acquitted of robbing one of the players, Donald Knight. *Id.* at 438-39. He was then later tried for robbing one of the other players, and found guilty. *Id.* at 439-40. The Supreme Court held that the subsequent prosecution was constitutionally prohibited because the only contested issue at the first trial was whether Ashe was one of the robbers. *Id.* at 445-47. Therefore, the first jury's verdict of acquittal collaterally estopped the State from trying him for robbing a different player in the same criminal episode. *Id.* at 447.

The petitioner asserts that the Court has a duty to sift through the testimony and determine

which facts were ultimately decided and which were not.  Emich Motors Corp., v. General Motors Corp, *supra*.  In fact, the petitioner asserts that it is the Court's obligation to do so.  The Court disagrees.

Emich merely requires a court to make a good faith effort, it does not require a court to read into the record that which is not there.  This Court has made such a good faith effort, and like the WVSCA, cannot determine from the record as it now stands, which key issues were necessarily decided by the jury's general verdict of acquittal.  Because it is not possible to conclude that the jury necessarily decided either of the two key issues, and the Court must reason, not guess, the Court concludes that the petitioner cannot meet his burden of establishing a double jeopardy violation which would preclude admission of the evidence that is relevant and goes to proof of the required elements of first degree murder.  Yearwood, 518 F.3d at 228 (noting that collateral estoppel prohibits neither a subsequent trial on a conspiracy charge "nor the admission of evidence related to both [an] acquitted [substantive] charge and to [a] charge of conspiracy").

Nevertheless, the Court finds that it is axiomatic that any subsequent trial cannot attempt to re-prove that Taylor participated in a conspiracy to murder Derrick Osborne.  *See* United States v. Nelson, 599 F.2d 714 (5th Cir. 1979).  It is undisputed that the state has already had a full and fair opportunity to litigate the conspiracy to commit murder charge and failed to obtain a conviction against the petitioner on that count.  In finding that no issue of ultimate fact was necessarily decided, neither the trial court nor the WVSCA considered what effect the verdict of acquittal otherwise has on Taylor's retrial.  And clearly, it must have some effect.  The decisions by the trial court and the

WVSCA seemingly allow the State to offer the conspiracy evidence without limitation.[11] That, however, cannot be. To so allow, gives no effect to the jury's verdict of acquittal, and as outlined above, is directly contrary to the Double Jeopardy Clause.

As charged in the indictments in this case, there is only one element of conspiracy to commit murder and first degree murder that overlap. That is, that Taylor shot and killed Derrick Osborne. It is clear that on retrial, the State is precluded from doing indirectly what it may not do directly. While it may offer evidence to prove the required elements of first degree murder, it may not retry the conspiracy case. Evidence of a conspiracy is not a charged element in the petitioner's indictment for murder and is not a required element of first degree murder.

Put simply, a retrial on the murder count does not give the State a "second bite at the apple." It merely means that the state is not precluded from introducing evidence related to the acquitted count if it can first show that the evidence is relevant to the elements of the mistried count and second, that it otherwise satisfies the State of West Virginia's rules of evidence. Dowling, 493 U.S. 348-349 (allowing the prosecution to present evidence at a subsequent trial pertaining to a previously acquitted charge if such evidence is admitted for purposes other than those requiring proof beyond a reasonable doubt). Additionally, the State must bear in mind that the "gravamen" of the crime of conspiracy is the "agreement to effectuate a criminal act." Yearwood, 518 F.3d at 226 (quoting United States Laughman, 618 F.2d 1067, 1074 (4th Cir. 1980)); *see also* United States v. Shabani, 513 U.S. 10, 16 (1994) ("the criminal agreement itself is the *actus reas* [of a criminal conspiracy]").

As the Fourth Circuit did in Yearwood, we look to a Fifth Circuit case that is factually

---

[11]It is this very prospect that caused the petitioner to seek relief before this Court.

analogous to this one. In <u>United States v. Nelson</u>, the defendant was acquitted on federal drug conspiracy charges, but due to a hung jury, a mistrial was declared on the substantive charges of possession and distribution. 599 F.2d at 715-16. The Fifth Circuit held that Nelson could be retried for aiding and abetting because that charge did not share the agreement element with the conspiracy charge. *Id.* at 716. Therefore, the Court concluded that a retrial for aiding and abetting would not relitigate an issue determined favorably to the defendant. *Id.* at 717. The Court noted, however, that:

> because the acquittal on the conspiracy count may have been premised on the Government's failure to prove the requisite element of agreement, we cannot hold that the verdict determined facts favorably to appellant which are essential to conviction on the substantive counts, which would require no proof of an agreement. Thus, we cannot hold at this stage, without knowing what evidence the Government will rely upon in a second trial, that the doctrine of collateral estoppel inevitably bars Nelson's conviction on retrial. **We note, however, that in a second trial the doctrine of collateral estoppel will prohibit the Government from using evidence which, if believed, would necessarily indicate participation in the conspiracy which the Government failed to prove in the first trial.**

*Id.* at 716–17 (Emphasis added).

## V. <u>Recommended Findings of Fact and Conclusions of Law</u>

For the reasons stated herein, the undersigned makes the following recommended findings of fact and conclusions of law:

(1) The petitioner has alleged an irreparably double jeopardy injury warranting equitable intervention in his pending state criminal proceedings.

(2) Taking the jury's verdict at face value establishes that Taylor is not guilty of conspiracy to commit murder.

(3) Following <u>Nelson</u>, the Court finds that the State cannot in Taylor's retrial, present

28

"evidence which, if believed, would necessarily indicate participation in the conspiracy which the [State] failed to prove in the [former] trial." Nelson 599 F.2d at 716-17.

(4) Under the collateral estoppel component of the Double Jeopardy Clause, the State is precluded from asserting or arguing in instructions, making conclusory statements of proof and legal conclusions that Taylor was involved in a conspiracy to murder Derrick Osborne.

(5) The State can, however, present evidence that may prove the required elements of first degree murder as charged in the indictment.

(6) What specific evidence the State may present is not a question for this Court to decide.

(7) Issues as to the relevancy of evidence, and its admissibility under the State of West Virginia's Rules of Evidence, are for the trial judge to determine.

## VI.    Recommendation

In accord with the recommended findings of fact and conclusions of law made herein, the undersigned recommends that:

(1) the respondents' Motion for Abstention or for Summary Judgment (dckt. 13) be **DENIED**;

(2) the petitioner's Motion for Summary Judgment (dckt. 17) be **GRANTED insofar as, and only insofar as**, the relief requested is in accord with the recommended findings of fact and conclusions of law made herein; and

(3) the petitioner's Amended Habeas Petition (dckt. 22) be **GRANTED to the extent** that the relief requested therein is in accord with the recommended findings of fact and conclusions of

law made herein, and be **DENIED to the extent** that any specific relief requested is inconsistent with those same recommended findings of fact and conclusions of law.

After being served with a copy of this Opinion/Report and Recommendation, both parties have until **June 25, 2010**, to file written objections identifying those portions of the recommendation to which objections are made, and the basis for such objections.  As discussed at oral argument, no response to any objection shall be permitted.  A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge.  Failure to timely file objections to the recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: June 18, 2010.

*John S. Kaull*

JOHN S. KAULL

UNITED STATES MAGISTRATE JUDGE